## Turner's Case.

*N. B. Spangler*, for petitioner; *S. D. Gettig*, for respondent.

FLEMING, P. J., July 29, 1929.—This proceeding is but one of the dying echoes of a period of matrimonial strife which has occupied the attention of our courts for quite a period. Five judges have been assailed, from both sides of this controversy, with letters, attempted interviews, telephone calls and all else, in which have been included not only the matrimonial but the financial and physical difficulties of the parties. It is well that the relations of this warring wife and belligerent husband be now finally settled.

William H. Turner, the husband, has applied for and been refused a divorce from his wife, Jessie R. Turner. He has complied with all orders relating to alimony *pendente lite* and counsel fees in the same. An order has been made directing him to pay, through the medium of our desertion probation officer, the sum of $25 per month for the support of his wife. He is complying with his order. He has, and has had since 1924, the custody of Mary Louise Turner, aged ten years, and William H. Turner, Jr., aged eight years. Since 1925 he has had the custody of Betty Jane Turner, aged six years. These are the children of William H. Turner and Jessie R. Turner, his wife. The present action is for the custody of Betty Jane Turner. There is nothing before the court as to the other two children, although we propose to dispose of their custody herein in order to finally settle the matter.

The Act of June 26, 1895, P. L. 316, as amended by the Act of May 13, 1925, P. L. 638, provides that in disputes between father and mother, relative to custody of their children, the court shall decree which, if either, parent shall have such custody, regard first being had to the fitness of such parent and the best interests and permanent welfare of the child: Com. *v.* Daubert, 24 Schuyl. Legal Rec. 409.

Reference has been made to an alleged verbal order of the late Judge Quigley, whereby the custody of this child was given to the mother. The testimony

of the mother is that the father, by some subterfuge, took the child away from her and has since refused to give it up. We can well understand why Judge Quigley awarded the child to the mother in 1924. The child was then but one year old. We are now concerned with a six-year-old child who has been left unmolested in the custody of the father for over four years. Nor can we consider any alleged statements made by the late Judge Keller in alleged personal interviews with one of the parties and in the absence of the other. The bald question before us is the best interest and the permanent welfare of the child as it is reflected from the record adduced at this hearing and from our personal investigation of the status of the parties. We disregard the sentimental appeals which we, too, have experienced by way of personal letters, attempted interviews and the like. We shall proceed to decide this matter in the hope of definitely settling this strife, in order that both parties may go their way and rebuild their shattered nerves and recoup their impaired finances.

The father of the child is a farmer residing in Worth Township. Residing nearby are his father and mother, long-time residents of the township, and known as of the substantial residents of the county. The father of the child is sober and industrious. He is making an honest effort to pay for and improve his farm. The buildings afford ample shelter. The products of his farm and that of his father furnish ample food. The township provides for the transportation of the school children to school at Port Matilda. There is a competent physician in Port Matilda who can reach the Turner residence in a short time upon call. The air is pure, the water is good and the environment of the Turner home is conducive to the upbringing of good boys and girls.

The mother of the child, from what we have learned in the divorce case, is not in excellent health. Unfortunately, her paternal home has recently been broken through the death of her father. While a spirit of loyalty, greatly to be admired, exists among her brothers and sisters, the fact remains that no permanent home exists for her. She is at present nursing and receiving $100 a month and expenses. The death or recovery of the patient will, however, certainly terminate such employment, and what then for the future? Nothing has been adduced before us to answer this. While her present employer may anticipate with pleasure the thought of the child coming there with her mother, the mere fact that the child is with her mother might hinder or prevent the mother in obtaining employment elsewhere.

From the standpoint of the child herself, she has been with her brother and sister since babyhood; she is used to the farm life—city life might harm her in more than one way. She now appears healthy and well nurtured.

We have no fault to find with the mother's ability to rear children provided environments and conditions are normal, which they are not with her. She is endeavoring to recoup her health and nerves and at the same time provide an income for herself in addition to the sum received by order of court. We are of the opinion that to add the care, physical and financial, of a child upon her would be injurious not only to the welfare and best interest of the child but to the mother herself.

We are satisfied that the father is competent to have the custody of the child and that the child's best interests and permanent welfare will be best served by leaving her where she is.

We recognize the duty imposed upon us to afford an opportunity for the continuance of maternal affection. We shall form our order so that the mother, if she so desires, may see her children at reasonable times.

And now, July 29, 1929, the prayer of the petition is refused and the custody of Mary Louise Turner, William Henry Turner, Jr., and Betty Jane Turner is awarded to the father, William H. Turner, upon the condition that he shall file in this proceeding his bond in the sum of $500 conditioned that he, the said William H. Turner, will deliver any or all of such children at such reasonable times and places within this county as shall be designated by the Juvenile Court officer for the purpose of permitting his wife, the said Jessie R. Turner, to see them and to foster the maternal love and affection which should exist in such cases.